24-519UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ENRIC MALLORQUI-RUSCALLEDA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE TRUSTEES OF INDIANA ) <br> UNIVERSITY - PURDUE UNIVERSITY ) <br> INDIANAPOLIS, ) <br> ) <br> Defendant. ) | No. 1:24-cv-00519-SEB-MG |

## ORDER

Plaintiff Enric Mallorqui-Ruscalleda ("Plaintiff") brought this lawsuit against his former employer, Defendant Trustees of Indiana University – Purdue University, Indianapolis ("IU"), alleging that IU discriminated against him on the basis of his race and/or national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. On February 20, 2025, Plaintiff, who is proceeding *pro se*,[1] filed a Motion to Transfer Venue to Central District of California. Dkt. 54. Thereafter, on March 20, 2025, IU moved for summary judgment, dkt. 59, in response to which Plaintiff has submitted: a Motion for Leave to File Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment, dkt. 61, filed on March 21, 2025; an Opposition to Defendant's Motion for Summary Judgment, dkt. 64, filed on March 21, 2025; a Motion for Leave to File Supplemental Brief in Opposition to Defendant's Motion for Summary

---

[1] Plaintiff has proceeded in this case *pro se* since September 23, 2024, when the Court granted Plaintiff's Motion to Withdraw Attorney Appearance. Dkt. 31.

1

Judgment, dkt. 65, filed on March 24, 2025; and a Motion to File Oversized Supplemental Brief *Nunc Pro Tunc*, dkt. 77, filed on April 6, 2025. On April 9, 2025, Plaintiff sought to have this action voluntarily dismissed without prejudice. Dkt. 80.[2]

We address first Plaintiff's Motion to Transfer Venue, dkt. 54, before turning to his Motion for Voluntary Dismissal without Prejudice, dkt. 80. Finally, we will discuss Plaintiff's summary judgment filings. Dkt. 61, 64, 65, 77.

## BACKGROUND

### I. Factual Averments

In his Complaint, dkt. 1, Plaintiff, who is Hispanic and a Spanish national, alleges that he began working for IU in August 2018 as Director of the Program in Spanish and Translation Studies and thereafter as an Assistant Professor in Spanish and Translation Studies. In addition to these paid positions, Plaintiff performed several uncompensated roles, including Assistant Director for Strategic Planning, Department of World Languages and Cultures; First-Year Spanish Language Program Coordinator; Coordinator, Program in Translation Studies; Second-Year Spanish Language Program Coordinator; and Faculty Mentor.

In March 2020, at the onset of the COVID-19 pandemic, Plaintiff, as so many others were required to do, began to work remotely, which status he maintained for the ensuing three years. On January 11, 2023, Plaintiff requested permission to continue working

---

[2] In addition to the motions listed above, Plaintiff has also filed a Motion to Compel Proper Notice and Disclosure, dkt. 63; Motion for Protective Order, dkt. 76; and Motion to Strike or Exclude Deposition Testimony, dkt. 79. Those motions remain pending and will be resolved in due course.

remotely, which request IU denied with a threat of termination if Plaintiff failed to resume his duties in-person. Shortly thereafter, on January 19, 2023, IU notified Plaintiff that his remote status would terminate on January 23, 2023, and that he was expected to return to campus. On May 10, 2023, Plaintiff, because he failed to attend work in person, was placed on indefinite unpaid leave.

## II.     Procedural History

On March 20, 2024, Plaintiff, who holds a PhD, a JD, and an LLM, filed this lawsuit against IU, claiming that he was discriminated against on the basis of race and/or national origin, in violation of Title VII. In September 2024, at Plaintiff's request and with leave of the Court, Plaintiff's attorneys withdrew their appearances, dkt. 25, 31, after which point Plaintiff has actively (and vigorously) litigated this lawsuit. For example, Plaintiff has—in this calendar year alone—moved for a court order directing IU to provide and bear the cost of a certified interpreter for his deposition, dkt. 40 (which the Court denied, dkt. 48); has thrice moved for leave to amend his complaint, dkt. 43, 44, 62 (all of which motions the Court denied, dkt. 75); and has filed two motions to compel, dkt. 46, 63 (one of which was denied, dkt. 82, and one of which remains pending).

On February 20, 2025, Plaintiff moved to transfer this litigation to the United States District Court for the Central District of California. Dkt. 54. IU objects to the motion, but Plaintiff has filed no reply. The deadline for doing so has now passed. Thus, Plaintiff's motion to transfer is ripe for ruling.

On March 20, 2025, IU moved for summary judgment. Dkt. 59. The following day, Plaintiff sought leave to file a supplemental brief in opposition, dkt. 61, and also filed

"Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Request for Additional Time under FRCP 56(d), Motion to Exclude Improperly Introduced Testimony, Motion to Strike False Declarations, Motion for Sanctions against Defendant and its Counsel for Procedural and Discovery Misconduct, and Request for other Appropriate Relief," dkt. 64. On March 24, 2025, Plaintiff again moved for leave to file a supplemental brief in response to IU's summary judgment motion. Dkt. 65. On April 6, 2025, after his previously-filed motions were fully briefed, dkt. 61, 65, Plaintiff moved once more for leave to file an oversized supplemental brief *nunc pro tunc*. Dkt. 77. The deadline to respond to Plaintiff's latest request re: filing a supplemental brief has now passed, and IU has filed no response. Plaintiff's requests for leave to file his supplemental brief, dkt. 61, 65, 77, are therefore ripe for ruling.

On April 9, 2025, Plaintiff moved to voluntarily dismiss this case without prejudice, dkt. 80, which IU opposes. Although Plaintiff filed no reply, that motion is briefed and awaits a ruling.

## DISCUSSION

First, we address Plaintiff's Motion to Transfer, dkt. 54, then his request for dismissal without prejudice, dkt. 80, and, finally, his requests for leave to file supplemental summary judgment responses, dkt. 61, 65, 77, as well as his oppositional brief, dkt. 64.[3]

---

[3] We refer to "Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Request for Additional Time under FRCP 56(d), Motion to Exclude Improperly Introduced Testimony, Motion to Strike False Declarations, Motion for Sanctions against Defendant and its Counsel for Procedural and Discovery Misconduct, and Request for other Appropriate Relief," dkt. 64, as Plaintiff's "oppositional brief" or "brief in opposition." Plaintiff's supplemental submissions, dkt. 61, 65, 77, shall be denoted as such.

4

I.      **Motion to Transfer Venue**

Plaintiff, now a California resident, seeks to have this case transferred to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Congress enacted the federal change of venue statute . . . to allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district." *Research Automation, Inc. v. Schrader-Bridgeport Int'l Inc.*, 626 F.3d 973, 977 (7th Cir. 2010).

The moving party bears the burden of establishing that (1) venue is proper in the transferor district; (2) venue and jurisdiction would be proper in the transferee district; and (3) the transfer will serve the convenience of the parties and witnesses and is in the interest of justice. *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 954 (N.D. Ill. 2017) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)). "When considering whether to transfer a case, a court must engage in a flexible and individualized analysis and look beyond a narrow or rigid set of considerations in [its] determinations." *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020) (internal quotations and citations omitted).

Here, Plaintiff bases his motion to transfer this litigation to the Central District of California primarily on considerations relating to his "residence, the locus of harm suffered, and the feasibility of litigating in California." Dkt. 54 at 11. IU opposes transfer on both

venue and personal jurisdictional grounds, arguing that the Central District of California would be an improper venue under 28 U.S.C. § 1391[4] and that IU lacks the requisite minimum contacts with California such that a California district court could exercise personal jurisdiction over it. Dkt. 55 at 2. Furthermore, IU emphasizes, Plaintiff himself filed this lawsuit in the Southern District of Indiana, where he has actively litigated for more than a year. Because there is no dispute that venue in the Southern District of Indiana is proper, we begin our analysis with whether venue would also be proper in the Central District of California.

Employment discrimination claims, such as asserted by Plaintiff here, are governed by Title VII's venue provision, which provides that suits may be filed in the judicial district where (1) the unlawful employment practice took place; (2) the employment records relevant to such practice are maintained; or (3) the aggrieved person would have worked but for the alleged unlawful practice. 42 U.S.C. § 2000e-5(f)(3). If no such judicial district exists, the action may be brought in the district in which the respondent has its principal place of business. *Id.* As recognized by other district courts in this Circuit, § 2000e-5(f)(3) is the exclusive venue provision for Title VII lawsuits, and, as such, it displaces, rather than merely supplements, the general venue provisions of 28 U.S.C. § 1391. *E.g.*, *Garus v. Rose Acre Farms, Inc.*, 839 F. Supp. 563, 566 (N.D. Ind. 1993); *Bland v. Edward D. Jones & Co., L.P.*, No. 18-cv-03673, 2020 WL 7027595, at *4 (N.D. Ill. Nov. 30, 2020); *Strategic

---

[4] Section 1391 states, in relevant part, that a "civil action may be brought in . . . a judicial district in which any defendant resides" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b).

6

*Mgmt. Harmony, LLC v. Enhanced Bus. Reporting Consortium, Inc.*, No. 4:05-cv-00180-JDT-WGH, 2007 WL 2316484, at *5 (S.D. Ind. Aug. 10, 2007); *see also* 28 U.S.C. § 1391(a) (stating that § 1391 governs venue of civil actions "[e]xcept as otherwise provided by law").

Section 2000e-5(f)(3)'s exclusivity notwithstanding, neither party has addressed or analyzed whether a potential transfer to the Central District of California comports with Title VII's venue provision. Although Plaintiff contends that a California-based venue would be proper because he is a California resident and that "[t]he economic, professional, and psychological consequences of [IU's] conduct were experienced exclusively within California," dkt. 54 at 15, he does not apply those considerations to an analysis under § 2000e-5(f)(3). Further, the relevancy of Plaintiff's residence is not readily apparent, given that "where a plaintiff resides" has no "bearing on where venue is proper under Title VII's venue provision." *Swank v. Wolfe*, No. 19 C 5951, 2020 WL 2112366, at *2 (N.D. Ill. May 4, 2020) (citing *Graham v. Spireon, Inc.*, No. 14-cv-00131, 2014 WL 3714917, at *3 (N.D. Ill. July 25, 2014) (collecting cases)).

According to Plaintiff, "[c]ourts within the Seventh Circuit have recognized that in employment discrimination and retaliation cases, the plaintiff's physical location at the time of the alleged harm is a significant factor in venue determinations." Dkt. 54 at 15. Relying solely on the thin reed of *Nicks v. Koch Meat Co., Inc.*, 260 F. Supp. 3d 942, 951 (N.D. Ill. 2017), which involved a collective action lawsuit alleging minimum wage and overtime violations under the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. § 201, *et seq.*, Plaintiff's reach outdistances his grasp, even though the court, in denying the

7

defendant employers' venue challenge, agreed that the transferee district was a proper venue based on the fact that plaintiff class members worked and were paid in that forum. *Id.* at 954. However, in *Nicks*, the court evaluated venue under 28 U.S.C. § 1391, as the underlying claims involved wage and overtime allegations—not, as Plaintiff argues, claims of employment discrimination and retaliation. Accordingly, the *Nicks* decision lacks persuasive force in convincing us that Plaintiff's "physical location" is a dispositive consideration in determining proper venue under § 2000e-5(f)(3).

Plaintiff also fails to articulate any basis on which we could find that IU has sufficient minimum contacts with California such that a California district court could exercise personal jurisdiction over it. Plaintiff avers that, from March 2020 through August 2023, IU, "with full knowledge and express acquiescence, permitted Plaintiff to continue working exclusively from California for the entire duration of his employment." Dkt. 54 at 14. Whether or to what extent IU did in fact authorize Plaintiff to work remotely from California, however, is a central factual dispute in this case; despite Plaintiff's references to "institutional correspondence" purportedly demonstrating otherwise, *see id.*, Plaintiff has neither submitted such evidence for our review nor articulated any connection between that evidence and a basis for personal jurisdiction.

Having failed to muster the legal and factual support for his position that the Central District of California would be a proper venue for this action, Plaintiff's Motion to Transfer Venue, dkt. 54, must be denied. Plaintiff, as the moving party, has entirely failed to carry his burden of demonstrating that his lawsuit "might have been brought" in the Central District of California, as is necessary to permit transfer under 28 U.S.C. § 1404(a). *See Kinney*

*v. Anchorlock Corp.*, 736 F. Supp. 818, 821 (N.D. Ill. 1990) (courts need not proceed to considering convenience of the parties and the interest of justice where moving party fails to establish that venue is proper in transferor and transferee districts). This is not a close question. Accordingly, Plaintiff's Motion to Transfer Venue to Central District of California shall be **DENIED**. Dkt. 54.

II.   **Motion for Voluntary Dismissal**

Plaintiff has also moved for voluntary dismissal of this action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2), and for waiver of any and all costs and fees associated with such dismissal. Dkt. 80 at 1. Additionally, he seeks a court order expressly preserving his right to reassert "related or arising claims" in a California (or other appropriate) forum. *Id.* at 11. Upon receipt of Plaintiff's motion, IU reportedly contacted him via email to request that any motion to dismiss be made with, rather than without, prejudice. Dkt. 81 at 1. Plaintiff declined. Dkt. 81-1 at 1.

Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "Unless the order states otherwise, a dismissal under this paragraph . . . is without prejudice." *Id.* As the language of Rule 41(a)(2) makes clear, "a court order is a prerequisite to dismissal," and "dismissal may be conditioned upon the plaintiff fulfilling whatever terms and conditions the district court, in its discretion, deems necessary to offset the possible prejudice [a] defendant may otherwise suffer from [a] plaintiff dismissing his complaint without prejudice." *Marlow v. Winston & Strawn*, 19 F.3d 300, 303 (7th Cir. 1994). Such conditions include, for instance, requiring that the dismissal be with prejudice and/or

9

requiring that the plaintiff pay the defendant's costs and attorney's fees. *See id.*; *Cauley v. Wilson*, 754 F.2d 769, 771 (7th Cir. 1985). "[A] plaintiff who moves for dismissal without prejudice under Rule 41(a)(2) must be given a reasonable opportunity to withdraw his motion in the event the district court grants the motion but only with prejudice." *Marlow*, 19 F.3d at 305.

We have little hesitation here in concluding that IU "will suffer 'plain legal prejudice' as a result of . . . dismissal of the plaintiff's action" without prejudice. *United States v. Outboard Marine Corp.*, 789 F.2d 497, 502 (7th Cir. 1986). At this stage of the litigation, both parties have expended substantial time and resources conducting discovery and submitting extensive written motions. Furthermore, IU has filed (and Plaintiff himself has opposed) a motion for summary judgment, suggesting that these proceedings have reached the point of a final resolution on the merits. Thus, permitting Plaintiff to dismiss this action without prejudice at this late stage would clearly impose significant legal prejudice on IU.

Plaintiff's insistence that his motion to dismiss "is submitted in good faith [and] not for purposes of delay or forum-shopping," dkt. 80 at 2, is belied by the procedural posture of this case. Indeed, Plaintiff's requested dismissal—wherein he explicitly states that he intends to file this action anew in a different forum—follows several denials by the Court of several motions for leave to amend his complaint on grounds that any "amendment at this late hour would cause delay, further expenses, and [would not be] in the interest of justice." Dkt. 75 at 2–3. In short, "[u]nfavorable rulings by [a] district court [are] not an acceptable basis to grant [Plaintiff's] voluntary dismissal or to facilitate the search for a perceivably more favorable state [or federal] judicial climate." *Tolle v. Carrol Touch, Inc.*,

23 F.3d 174, 178 (7th Cir. 1994); *see also Mallory v. Rush Univ. Med. Ctr.*, No. 18 C 4364, 2020 WL 6559155, at *6 (N.D. Ill. Nov. 9, 2020) (denying motion for voluntary dismissal and expressing "concern that the dismissal request was motivated by [a] belief that dismissing the case would enable her to evade" court rulings) (internal quotation marks omitted).

For these reasons, a voluntary dismissal without prejudice is unwarranted and improper, pursuant to Federal Rule of Civil Procedure 41(a)(2). Under such circumstances, "an action shall not be dismissed at the request of a plaintiff." *Tolle*, 23 F.3d at 177–78. Accordingly, Plaintiff's motion for voluntary dismissal, dkt. 80, shall be granted only **on the condition that dismissal is with prejudice**. Otherwise, Plaintiff shall have **fourteen (14) days** from the date of this Order to withdraw his motion for voluntary dismissal. If Plaintiff fails to withdraw his motion, the Court will grant Plaintiff's motion for voluntary dismissal specifying that the dismissal is **with** prejudice.

### III. Plaintiff's Summary Judgment Response Brief(s)

In light of the parties' briefing of IU's summary judgment motion, we undertake here an effort to clarify which of Plaintiff's many responsive submissions constitute his brief in opposition. As recited above, IU moved for summary judgment on March 20, 2025, dkt. 59, in apparent response to which Plaintiff has submitted the following: a Motion for Leave to File Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment, dkt. 61, filed on March 21, 2025; an Opposition to Defendant's Motion for Summary Judgment, dkt. 64, filed on March 21, 2025; a Motion for Leave to File Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment, dkt. 65, filed on March 24,

11

2025; and a Motion to File Oversized Supplemental Brief Nunc Pro Tunc, dkt. 77, filed on April 6, 2025.

Plaintiff's Motion for Leave to File Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment, dkt. 61, is **GRANTED**, and his Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment, dkt. 61-1, thus will be combined with his brief in opposition, dkt. 64, to constitute Plaintiff's summary judgment response.[5]

Plaintiff's March 24, 2025, Motion for Leave to File Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment, dkt. 65, (which is identical in form and substance to Plaintiff's March 20, 2025, motion, dkt. 61) and Plaintiff's Motion for Leave to File Oversized Supplemental Brief *Nunc Pro Tunc*, dkt. 77, are **DENIED** as moot.

We pause to clarify our expectation that the parties—represented and unrepresented alike—will in all respects fully comply with our Local Rules. Due to "the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, [the Seventh Circuit] ha[s] repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011); *see McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in

---

[5] Although IU opposed Plaintiff's requests to file a supplemental brief, dkt. 70, it nonetheless "construe[d]" Plaintiff's supplemental brief as his "proper response" for purposes of preparing a reply brief, which IU filed on May 5, 2025. Dkt. 83 at 1 n.1

12

ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

Our Local Rules plainly and unambiguously provide that "[a]ny pleading, motion, brief, affidavit, notice, or proposed order filed with the court, *must* . . . have at least 1-inch margins; use at least 12-point type in the body of the document and at least 10-point type in footnotes; [and] be double spaced . . . ." S.D. Ind. L.R. 5-1(b) (emphasis added). These guidelines ensure that no party is entitled to manipulate the appearance of its submissions so as to circumvent the page limitations imposed by Local Rule 7-1(e). Relatedly, our Local Rules require that all electronically filed exhibits be "created as a separate PDF file" and "submitted as an attachment to the main document and given a title which describes its content." S.D. Ind. L.R. 5-6(a). Failure to comply with these procedures hinders our ability to locate and review each exhibit that has been submitted into the record and cited in the parties' briefs. This concern is heightened on summary judgment, given that the court has no duty to scour the record in search of evidence that has not been properly submitted or cited by the parties. *See* S.D. Ind. L.R. 56-1(h). To enforce these provisions, we "may strike from the record any document that does not comply with the rules governing the form of documents filed with the court . . . ." S.D. Ind. L.R. 1-3.

Unfortunately, both parties before the Court have given short shrift to these responsibilities. Plaintiff has failed to comply with the formatting guidelines set forth in Local Rule 5-1(b), as none of his voluminous submissions have been double spaced. Similarly, neither party has complied with the rules concerning the submission of exhibits. For example, Plaintiff attached a single, ninety-nine-page exhibit, dkt. 64-1, comprised of several,

smaller exhibits, in clear contravention of our Local Rule requiring that electronically filed exhibits be created as *separate* PDF files. S.D. Ind. L.R. 5-6(a). In moving for summary judgment, IU submitted fourteen exhibits, each of which is generically titled as "Exhibit," *see generally* dkt. 59, despite our Local Rule expressly requiring that *all* exhibits be affixed with "a title which describes its content." S.D. Ind. L.R. 5-6(a). We reiterate: compliance with our Local Rules facilitates the Court's ability to locate and review the parties' evidentiary submissions. We admonish both parties that failure to comply with our Local Rules may result in the Court striking noncompliant submissions. *See* S.D. Ind. L.R. 1-3.

## CONCLUSION

For the reasons explained above, the Court hereby rules as follows:

- Plaintiff's Motion to Transfer Venue to Central District of California is **DENIED**. Dkt. 54.

- Plaintiff shall have **FOURTEEN (14) DAYS** from the date of this Order to withdraw his Motion for Voluntary Dismissal without Prejudice. Dkt. 80. If Plaintiff withdraws his motion, the case will proceed accordingly; if he does not, the Court will grant his motion with the condition that the dismissal is **with prejudice**.

- Plaintiff's Motion for Leave to File Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment is **GRANTED**. Dkt. 61. Plaintiff's Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment, dkt. 61-1, shall be deemed filed and included as part of the brief in opposition, dkt. 64, constituting Plaintiff's summary judgment response.

- Plaintiff's (second) Motion for Leave to File Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment is **DENIED as moot**. Dkt. 65.

- Plaintiff's Motion for Leave to File Oversized Supplemental Brief *Nunc Pro Tunc* is **DENIED as moot**. Dkt. 77.

IT IS SO ORDERED.

Date: 5/6/2025

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ENRIC MALLORQUI-RUSCALLEDA
10775 Lotus Drive
Garden Grove, CA 92843

Emily M Stultz
emstultz@iu.edu

Myekeal D Wynn, Jr
Indiana University Office of General Counsel
myesmith@indiana.edu