UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

**FILED**

**06/08/2025**

**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Kristine L. Seufert, Clerk**

ENRIC MALLORQUI-RUSCALLEDA, )
                         )
      Plaintiff,         )
                         )
v.                           )      CAUSE NO. 1:24-CV-00519-SEB-MG
                         )
THE TRUSTEES OF INDIANA     )
UNIVERSITY-PURDUE          )
UNIVERSITY INDIANAPOLIS,    )
                         )
      Defendant.      )

**PLAINTIFF'S MOTION TO ENFORCE DISCOVERY ORDER, IMPOSE SANCTIONS UNDER RULE 37(b), AND GRANT ALL FURTHER RELIEF NECESSARY TO PRESERVE THE INTEGRITY OF THESE PROCEEDINGS**

**I. INTRODUCTION**

NOW COMES Plaintiff, appearing *pro se*, and respectfully moves this Honorable Court, pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, to enforce its Order of May 22, 2025 (Dkt. 104), and to impose sanctions proportionate to Defendants' continued and willful failure to comply with their discovery obligations. This Motion is not premised on mere delay, but on a pattern of calculated evasion culminating in a procedurally hollow and substantively misleading filing that falsely suggests compliance with a binding judicial directive.

Defendants' conduct reflects neither inadvertence nor logistical mishap. Rather, it evidences a strategic pattern of avoidance: they create the illusion of compliance while frustrating both the spirit and the letter of the Federal Rules. They have failed to deliver discovery as ordered, refused to substantiate their claims of production, and circumvented meaningful engagement

1

during the meet-and-confer process. In doing so, they have materially impaired Plaintiff's ability to litigate his claims and respond to forthcoming dispositive motions.

This conduct—when viewed in totality—violates not only Rule 37(b), but also Rule 11(b), 28 U.S.C. § 1927, and Indiana Rules of Professional Conduct 3.3 (Candor Toward the Tribunal), 3.4(c) (Knowing Disobedience of Court Orders), and 8.4(d) (Conduct Prejudicial to the Administration of Justice). Sanctions are therefore warranted, including but not limited to: default judgment, adverse inference, evidentiary preclusion, striking of defenses, reasonable costs and fees, a finding of technical contempt, and referral to disciplinary authorities.

Judicial intervention is now essential to safeguard the integrity of these proceedings and to restore balance where one party—self-represented—has been repeatedly denied discovery through misrepresentation and delay, while the other controls both the evidence and the procedural narrative.

## II. PROCEDURAL HISTORY

This case has been characterized by repeated and escalating failures by Defendants to comply with their discovery obligations. On multiple occasions, Defendants failed to provide timely and complete responses to Plaintiff's interrogatories and requests for production, necessitating judicial intervention. Plaintiff served a Discovery Deficiency Letter on January 13, 2025 (see Exhibits 1 and 2), expressly requesting a meet-and-confer. On January 22 (see Exhibit 1), Defendants summarily denied any deficiency, invoked the silence of Plaintiff's former attorneys as retroactive validation, and attached a privilege log as their only substantive reply (See Exhibit 3). Although they nominally offered to meet, they simultaneously dismissed all objections, rendering the process structurally futile and legally hollow (see Exhibit 1).

The privilege log (see Exhibit 3) submitted by Defendants fails entirely to meet the requirements of Rule 26(b)(5)(A). It omits critical elements, including the identities of authors and recipients, the dates of the communications, the subject matter, and the specific legal grounds for asserting privilege. It also lacks foundational metadata and any articulation of the context necessary to assess the applicability of the claimed protections. Courts have consistently held that such vague, conclusory, or boilerplate privilege logs are legally deficient and may result in waiver of the asserted privilege. See *Victor Stanley, Inc.* v *Creative Pipe, Inc*., 250 F.R.D. 251, 264–66 (D. Md. 2008) (requiring detailed information sufficient to assess privilege and warning that failure to do so may result in waiver); *Clarke* v *American Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (holding that inadequate privilege logs prevent meaningful review and cannot support withholding of documents).

On May 1, 2025, this Court issued an Order denying Plaintiff's Motion to Compel without prejudice and set a telephonic conference to further address Plaintiff's concerns regarding the completeness of Defendant's discovery production. Although the Court did not resolve the underlying deficiencies at that stage, it explicitly acknowledged Plaintiff's good-faith efforts and noted that "Plaintiff's assessment that a conference would not be productive appears reasonable". During the May 21, 2025 conference, the Court granted Defendants' request for a fourteen-day window to complete their discovery production. The following day, on May 22, 2025, the Court issued a written Order memorializing that directive and setting a firm deadline of May 29, 2025 for full compliance.

Instead of complying, Defendants filed a "Notice of Discovery Production" on May 27, 2025 (Dkt. 105), asserting that a flash drive containing the responsive materials had been sent by Certified Mail on May 23. That representation, however, remains wholly uncorroborated: no USPS

tracking data confirms mailing or delivery, and no discovery materials have been received by Plaintiff through any channel to date.

Indeed, USPS tracking indicates that although a shipping label was generated, the parcel was never entered into the mailstream (see Exhibits 4 and 5). According to USPS service standards, Certified Mail from Indiana to Los Angeles typically arrives within two to three business days (see Exhibit 6). As of June 8—more than two weeks after the purported mailing—there is no record of transmission, receipt, or any alternate delivery.

Defendants failed to confirm delivery, take remedial action, or follow up with any alternative. Only after Plaintiff requested clarification did counsel respond, on June 5, stating that the flash drive had been provided to USPS on May 23, that they could not explain the tracking failure, and that they would transmit the files electronically if Plaintiff had not received them by June 9 (see Exhibit 7). This reactive and conditional offer came eleven days after the court-ordered deadline and reflects neglect rather than diligence.

Moreover, Defendants' interrogatory responses are not merely evasive—they are affirmatively obstructive and executed in patent bad faith. As evidenced in Exhibits 8 and 9, they systematically withhold foundational information indispensable to resolving the claims and defenses at issue. Their answers omit the identification of institutional actors, refuse to clarify the rationale or timing of adverse actions, and decline to offer any coherent chronology of events. These omissions do not arise from complexity or ambiguity; they represent a refusal to provide the most basic facts demanded by Rules 26 and 33 of the Federal Rules of Civil Procedure.

Rather than respond with candor or clarity, Defendants invoke boilerplate objections, disavow knowledge of plainly known facts, and refer vaguely to documents that either were never produced or are so voluminous, unindexed, and context-free as to be legally meaningless. The

effect is not accidental: their responses contain no admissions, no factual substance, and no discernible effort to move this litigation forward. They convert the discovery process into a hollow ritual—weaponized not to inform, but to delay, obscure, and exhaust.

This pattern cannot be attributed to mere inadvertence; rather, it reflects deliberate strategic obstruction. Defendants have refused to disclose the identity of comparators; failed to acknowledge even the existence of adverse employment actions; and rendered themselves incapable of being deposed by refusing to articulate who made what decisions, when, or why. This dereliction collapses the evidentiary record and renders effective discovery impossible.

Such conduct is not merely noncompliant—it is sanctionable under Rule 37, and arguably violative of Rule 11(b)(3), which requires factual assertions to be grounded in evidentiary support. It further implicates the Court's inherent authority to ensure that litigation is not corrupted by gamesmanship and obstruction. A party that answers interrogatories in this manner betrays the very purpose of discovery and forfeits any claim to procedural deference.

Their document production responses fare no better. Defendants failed to provide any Rule 26(g) certification attesting to completeness or good faith. The privilege log—offered as the exclusive answer to Plaintiff's detailed objections—is manifestly defective (see Exhibit 3). It omits critical metadata, including dates, authors, recipients, subject matter, and the specific legal basis for each assertion of privilege. This failure renders it legally void under Rule 26(b)(5)(A), which mandates sufficient detail to evaluate the applicability of any claimed exemption.

Plaintiff raised these defects in writing with particularity. Defendants have neither cured them nor offered justification. The continued use of procedurally hollow, substantively empty responses confirms that this is not mere delay—it is a deliberate effort to prevent discovery altogether.

Such conduct violates Rules 26(a), 26(e), and 37 of the Federal Rules of Civil Procedure, and Indiana Trial Rules 26 and 11(A), which impose affirmative duties of disclosure, supplementation, and candor. Defendants' pattern of obstruction is incompatible with the guiding mandate of Rule 1 and frustrates the just, speedy, and inexpensive determination of this action.

In short, Defendants have not complied with the Court's May 22 Order. They have manufactured the appearance of cooperation through unverified declarations, empty procedural gestures, and strategic omissions—obstructing discovery, prejudicing Plaintiff, and undermining the judicial process itself.

## III. LEGAL STANDARD

Under both federal and Indiana law, parties and their counsel bear an affirmative duty to conduct discovery in good faith, to comply promptly and fully with court orders, and to refrain from conduct designed to delay, mislead, or obstruct the adjudicative process. These obligations are codified in the Federal Rules of Civil Procedure and mirrored in the Indiana Rules of Trial Procedure, which together form a cohesive framework for procedural integrity and ethical accountability.

### A. Rule 37(b)(2) – Federal and State Sanctions for Discovery Violations

Federal Rule of Civil Procedure 37(b)(2)(A) authorizes courts to impose sanctions when a party fails to obey an order to provide or permit discovery. Among the remedies available under this rule are the establishment of designated facts as conclusively proven, the prohibition of the disobedient party from supporting or opposing designated claims or defenses, the striking of pleadings in whole or in part, the staying of proceedings until compliance is achieved, the dismissal of the action in whole or in part, the entry of default judgment, and the imposition of monetary sanctions including the payment of reasonable expenses and attorney's fees caused by the

noncompliance. These sanctions are not confined to parties who are legally represented; even where a litigant appears *pro se*, as is the case for Plaintiff, the obligations imposed on opposing counsel remain unchanged. Defendants, represented by legal counsel throughout these proceedings, were under an unambiguous legal duty to comply with the Court's discovery orders. Their continued failure to do so triggers full consideration of the sanctions enumerated above.

Indiana Trial Rule 37(A) mirrors the structure and purpose of its federal analogue, empowering state courts to impose equivalent sanctions where appropriate. These measures are not merely punitive; they are essential to preserving judicial authority, deterring procedural abuse, and protecting the substantive and procedural rights of the opposing party. They function as structural correctives that ensure fairness and compliance within the adversarial system.

The U.S. Supreme Court has long affirmed the legitimacy of such sanctions where a party's failure to comply arises from willfulness, bad faith, or fault, as distinct from excusable neglect or unavoidable error. In *Societe Internationale* v *Rogers*, 357 U.S. 197, 212 (1958), the Court underscored that the threshold for sanctions is met where disobedience reflects a deliberate or reckless disregard for judicial authority.

Further refining this principle, the Seventh Circuit has articulated a fact-intensive framework for determining whether sanctions are appropriate. Courts must evaluate the extent of prejudice suffered by the opposing party, the degree of willfulness or bad faith underlying the misconduct, the likely effectiveness of lesser sanctions, and whether the noncompliance forms part of a broader pattern of obstruction. These factors were addressed in *Hindmon* v *National-Ben Franklin Life Ins. Co.*, 677 F.2d 617, 619–20 (7th Cir. 1982), *Collins* v *Illinois*, 554 F.3d 693, 696–98 (7th Cir. 2009), and *Brown* v *Columbia Sussex Corp.*, 664 F.3d 182, 191–92 (7th Cir. 2011),

which collectively affirm the judiciary's authority to respond firmly and proportionally when faced with conduct that undermines the fair and orderly administration of justice.

## B. Rule 26(A) – Affirmative Duty to Disclose

Indiana Trial Rule 26(A), consistent with Federal Rule 26(a), imposes a proactive duty to disclose all relevant and discoverable material without awaiting a discovery request. This duty is ongoing and requires supplementation when new facts arise or prior disclosures prove incomplete or inaccurate.

Noncompliance—particularly after a court-ordered deadline—constitutes sanctionable misconduct under Rule 37 and disrupts the balance of fair litigation. The strategic withholding of information is not a neutral act: it provides undue advantage to the non-disclosing party and simultaneously hampers the opponent's ability to prepare, respond, and proceed.

## C. Rule 11(A) – Ethical Certification and Duty of Candor

Indiana Trial Rule 11(A) mandates that every pleading, motion, or filing must be signed as certification that it is presented in good faith, factually grounded, and not interposed for delay, harassment, or deception. Unlike its federal analogue, Indiana's version omits any "safe harbor" provision and allows for immediate sanctions upon a finding of violation.

Here, the filing of a "Notice of Discovery Production" that falsely suggests compliance—when no mailing, delivery, or transmission ever occurred—violates both the letter and spirit of Rule 11(A). Such conduct misrepresents the procedural posture of the party and subverts the efficiency and truth-seeking function of the discovery process. It is not a mere defect; it is an affirmative ethical breach warranting correction and discipline.

## D. Adverse Inference and Inherent Judicial Authority

When a party fails to produce discoverable evidence, especially material solely within its control, courts may draw an adverse inference that the missing evidence would have been unfavorable to the withholding party. See *Nationwide Life Ins. Co.* v *Richards*, 541 F.3d 903, 911 (9th Cir. 2008); *Park* v *City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002).

This presumption is not punitive—it is evidentiary in nature, designed to neutralize the tactical benefit gained through concealment. Courts are not required to show bad faith to apply it where evidence has been wrongfully withheld.

Furthermore, courts retain inherent authority to sanction litigation conduct undertaken in bad faith. This includes behavior that constitutes technical contempt, deliberate misrepresentation, or any form of manipulation that impairs the court's ability to enforce its own orders. See *United Mine Workers of Am.* v *Bagwell*, 512 U.S. 821, 831 (1994); *Roadway Express, Inc.* v *Piper*, 447 U.S. 752, 764–65 (1980).

### E. Local Rule 37-1(b) – Duty to Confer in Good Faith

Local Rule 37-1(b) of the Southern District of Indiana imposes a mandatory obligation to confer in good faith before seeking judicial relief for discovery disputes. Defendants' filing of a superficial "Notice of Mailing"—without effectuating delivery and followed by silence despite multiple attempts at resolution—falls far short of this local requirement.

The filing of a formal notice, absent the underlying performance it purports to memorialize, frustrates the Rule's purpose and subverts both the procedural and ethical expectations enshrined in the Federal Rules.

### F. Synthesis

Taken together, Federal Rule 37, Indiana Trial Rules 26(A) and 11(A), Local Rule 37-1(b), and the Court's inherent authority form a comprehensive and integrated legal framework to address

discovery abuse. These are not ornamental provisions—they are structural safeguards that ensure litigants proceed on a level playing field.

Where discovery violations reflect a pattern of obstruction, concealment, or misrepresentation—as they do here—robust judicial intervention is not just permissible, but essential. The system depends not on formal gestures of compliance, but on substantive, verifiable good faith. Where that is lacking, as reflected by the present record, sanctions, adverse inferences, evidentiary preclusion, and disciplinary referral are not only justified—they are required to preserve the integrity of the judicial process.

## IV. ARGUMENT

### IV.1. Defendants Have Materially Violated the Court's May 21, 2025 Order

The Court's May 22, 2025 Order (Dkt. 104) expressly mandated that Defendants re-produce the entirety of their discovery disclosures by no later than May 29, 2025. This was not a permissive request; it was a binding directive issued under the Federal Rules of Civil Procedure to correct Defendants' previous discovery failures. In blatant disregard of this obligation, Defendants filed a purported "Notice of Discovery Production" on May 23—before the deadline, but after months of prior deficiencies—claiming that they had mailed a USB flash drive to Plaintiff. However, the USPS tracking number they cited confirms that the package never entered the mailstream and remains entirely unscanned, thus rendering their assertion wholly unsupported. See Exhibit 4 (USPS Tracking Screenshot for Tracking No. 70100780000141314109), which confirms that no parcel was ever received, scanned, or processed by USPS—despite Defendants' sworn representation to the contrary. This evidentiary void is dispositive: delivery never occurred. The only reasonable conclusion is that Defendants generated the shipping label to create the illusion of compliance while knowingly withholding actual performance. This conduct is not

merely negligent; it is affirmative deception designed to frustrate judicial oversight and obstruct discovery enforcement.

Defendants have relied on this kind of deflection before—invoking vague denials, professed ignorance, or misattributed blame to avoid confronting the record. Their current position mirrors their prior refusal to acknowledge even publicly available evidence hosted on IUPUI's own website, which documents a sustained pattern of disparate treatment culminating in Plaintiff's termination. In response to Plaintiff's opposition to summary judgment, Defendants dismissed that evidence—including numerous authenticated exhibits drawn directly from IUPUI's official site— as inadmissible hearsay (Dkt. 83). Their litigation posture is thus consistent: when confronted with proof of misconduct, Defendants deem it inadmissible, incomprehensible, or someone else's responsibility.

Yet well-established precedent forecloses this type of procedural gamesmanship. Courts have made clear that compliance with discovery orders requires actual, verifiable performance— not superficial gestures. See *Nat'l Hockey League* v *Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (sanctions upheld where party exhibited "flagrant bad faith" and "callous disregard of responsibilities"). Defendants' tactic—filing a formally correct document devoid of substantive compliance—falls squarely within this category of sanctioned misconduct. See also *Roadway Express, Inc.* v *Piper*, 447 U.S. 752, 766 (1980).

Federal Rule 37(b) and its Indiana analogue both demand that delivery—not mere declaration—marks compliance. Courts within the Seventh Circuit have uniformly held that procedural formalism does not cure substantive failure. See *Collins* v *Illinois*, 554 F.3d 693, 697 (7th Cir. 2009). Moreover, Rule 11(A) prohibits any filing that misrepresents a party's level of compliance with court orders, and courts have the inherent authority to sanction such deceitful

11

tactics. See *BankAtlantic* v *Blythe Eastman Paine Webber, Inc.*, 127 F.R.D. 224, 227 (S.D. Fla. 1989) ("Delivery, not declaration, is the operative act.").

In light of this record, Defendants' failure to effectuate delivery is not a harmless lapse—it is a willful breach that prejudices Plaintiff and undermines the Court's authority. Judicial enforcement under Rule 37(b), Indiana Trial Rule 37, and the Court's inherent powers is not only appropriate, but essential.

### IV.2. The Noncompliance Is Prejudicial, Obstructive, and Strategically Harmful

The failure to comply with the May 22, 2025 Order has inflicted immediate and continuing prejudice upon Plaintiff. The withheld discovery is not tangential—it is central to developing Plaintiff's claims, opposing dispositive motions, and preparing for trial. Without it, Plaintiff cannot draft pleadings, conduct depositions, or mount an adequate evidentiary defense.

As the Supreme Court held in *Hickman* v *Taylor*, 329 U.S. 495, 507 (1947), "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Discovery violations that deprive one party of that access sabotage this principle and tilt the balance of litigation unfairly. This harm is especially acute where, as here, Plaintiff proceeds pro se, facing a represented institutional defendant. Courts have acknowledged the vulnerability of pro se litigants to discovery abuse. See *Kaba* v *Stepp*, 458 F.3d 678, 687 (7th Cir. 2006).

This is not a case of mistaken omission; it is a pattern of evasive conduct culminating in misrepresentation. The supposed production never arrived. The label was never scanned. The file was never received—by mail or electronically. Defendants ignored multiple inquiries. No alternative transmission was proposed, no investigation undertaken, no remedial action offered. Instead, they engaged in performative compliance while Plaintiff acted with sustained procedural integrity.

12

The prejudice here is not speculative; it is real, continuing, and irreparable. Courts have held that such obstruction—especially where deliberate—justifies sanctions under Rule 37(b) and implicates fundamental due process rights. See *Brown* v *Columbia Sussex Corp*., 664 F.3d 182, 191–92 (7th Cir. 2011).

Moreover, Defendants violated Indiana Trial Rule 26(A), which requires that disclosures be made in a form "reasonably calculated to apprise the other party of their substance." They failed this standard completely. Not only did they neglect to confirm receipt, but they remained silent when informed that no discovery had reached Plaintiff, despite Plaintiff's repeated efforts— through letters, motions, and emails—to obtain what was rightfully his.

The cumulative effect of this conduct is obstructive and unethical. It deprives Plaintiff of evidence, burdens the Court, and exploits procedural disparities to the benefit of a publicly represented institution. A strong remedial response is both warranted and necessary.

### IV.3.3. Arguendo Compliance: Legal Insufficiency and Ethical Breach in the Handling of Confidential Data

Even assuming *arguendo* that Defendants did, in fact, mail the discovery materials on May 23, 2025—as claimed in their unverified docket notice—their conduct remains legally insufficient, procedurally deficient, and ethically negligent. Compliance with a discovery order is not satisfied by the mere creation of a shipping label or dispatch of a parcel into an evidentiary void; it requires verifiable transmission, confirmed receipt, and reasonable precautions commensurate with the sensitivity of the materials involved. These obligations are magnified when, as here, the discovery concerns highly sensitive and legally protected information.

The materials purportedly produced include Plaintiff's private medical history, disability-related records, termination documentation, and personal financial data. These fall squarely within

the ambit of multiple protective frameworks. The Americans with Disabilities Act, 42 U.S.C. § 12112(d)(3)(B), imposes strict confidentiality on medical records disclosed in the employment or litigation context. The Privacy Act of 1974, 5 U.S.C. § 552a(b), bars disclosure of personal records maintained by federal agencies except under narrowly defined circumstances. The common-law right to privacy, as recognized in *Whalen* v *Roe*, 429 U.S. 589, 599–600 (1977), further establishes a constitutionally protected interest in avoiding disclosure of sensitive personal information—a principle that courts have extended to civil litigation involving medical and mental health records. See *Doe* v *Luzerne County*, 660 F.3d 169, 175–77 (3d Cir. 2011).

Further, the doctrine of reasonable safeguards, rooted in ABA Model Rule 1.6(c) and codified in Federal Rule of Civil Procedure 26(g), imposes an affirmative duty on counsel to ensure that confidential materials are transmitted securely and disclosed only with care. This includes basic protective measures such as encryption, secure file transfer, chain-of-custody verification, or delivery confirmation.

Here, no such safeguards were employed. There is no certified mailing receipt, no USPS scan, no acknowledgment of receipt, and no evidence of an alternative secure transmission. Defendants ask this Court to accept that they fulfilled a binding discovery order—implicating highly sensitive data—based solely on the unverified assertion that a flash drive was mailed. As confirmed during Plaintiff's deposition, the data allegedly produced contained full email threads with sensitive attachments, yet was transmitted (if at all) without encryption, tracking, or even confirmation of delivery.

Rather than mitigate liability, this absence of diligence exacerbates it. The Seventh Circuit has made clear that judicial orders must be met with rigorous compliance. In *Hindmon* v *National-Ben Franklin Life Ins. Co.*, 677 F.2d 617, 621 (7th Cir. 1982), the Court emphasized that

14

disobedience cloaked in procedural formality undermines both the rights of litigants and the authority of the judiciary. The pretense that a never-scanned shipping label satisfies a court's discovery mandate—particularly when involving ADA- and Privacy Act-protected materials—is an act of procedural cynicism. As observed in *Phoenix Four, Inc.* v *Strategic Res. Corp.*, 2006 WL 1409413, at *5 (S.D.N.Y. May 23, 2006), "illusory compliance"—the fabrication of diligence to conceal inaction—invites sanction.

Additionally, counsel's handling of these materials raises serious ethical concerns. The failure to secure sensitive discovery violates Model Rule 1.6 (confidentiality of information), Rule 4.4(b) (respect for the rights of third parties), and Rule 3.3 (candor toward the tribunal). At a minimum, it also contravenes Rule 26(g) of the Federal Rules of Civil Procedure, which requires that all discovery certifications be "complete and correct as of the time made."

Even under the most generous interpretation of the facts, Defendants have failed to satisfy basic standards of discovery practice. Whether by omission or fabrication, their conduct has endangered Plaintiff's legal and privacy rights, misled the Court, and evaded accountability under a binding order. This is not a matter for indulgence or procedural benefit of the doubt. It is a matter requiring immediate judicial scrutiny, remedial sanction, and a clear reaffirmation that compliance must be real—not simulated.

## IV.4. Defendants' Noncompliance Constitutes Technical Contempt and Willful Disregard of Judicial Authority

Defendants' conduct—disguised in procedural formalism while substantively hollow—constitutes a willful violation of this Court's May 22, 2025 Order. Filing a deceptive "Notice of Discovery Production," unsupported by any verifiable delivery or transmission, is not a minor error; it is a deliberate evasion engineered to mislead the Court and obstruct enforcement.

15

Compliance is not assessed by empty gestures but by the timely and complete execution of judicial directives. Civil contempt does not require open defiance—only conduct that frustrates the purpose of a court order. See *United States* v *United Mine Workers of Am.*, 330 U.S. 258, 303 (1947). Here, Defendants generated a shipping label without mailing; filed a compliance notice without performance; and spoke the language of cooperation while subverting its substance.

In addition to the relief explicitly authorized by Rule 37(b), Plaintiff invokes this Court's inherent authority to sanction litigation misconduct, as reaffirmed in *Chambers* v *NASCO, Inc.*, 501 U.S. 32, 44–46 (1991). That authority extends beyond procedural rules and enables the Court to respond to abuses that threaten the integrity of its process. Defendants' conduct—marked by false certification, strategic nonperformance, and procedural manipulation—squarely satisfies the threshold for such inherent remedial powers.

Plaintiff respectfully submits that the Court may formally declare the May 23, 2025 "Notice of Discovery Production" to be null, procedurally ineffective, and legally void. This filing, unsupported by any evidence of delivery, falsely portrayed compliance while no such act occurred. The continued presence of that docket entry distorts the procedural record and obscures the real posture of this case.

Given the recurring pattern of misrepresentation and evasion, Plaintiff also urges the Court to consider whether continued participation by Indiana University's in-house counsel is consistent with the demands of justice. Their failure to ensure compliance, verify delivery, or engage in candid disclosure may warrant suspension pending disciplinary review or other appropriate intervention. In light of Defendants' ongoing failure to comply with their obligations, it would be reasonable for the Court to impose a temporary pre-filing oversight mechanism, requiring prior

leave of Court for further submissions on discovery matters. Such a remedy is necessary to prevent continued misuse of procedural filings to simulate performance and confuse the docket.

Moreover, Plaintiff respectfully reiterates his request for compensatory relief beyond routine litigation expenses. Defendants' sustained misconduct has caused significant non-economic harm—aggravating a pre-existing medical condition, disrupting medical care, and impairing Plaintiff's caregiving stability. This injury is neither abstract nor unforeseeable. It falls well within the scope of compensable harm under equitable doctrines such as the Thin Skull Rule, and merits tailored redress beyond mere cost-shifting. As courts have long recognized, equitable relief must correspond to the full extent of the injury suffered when misconduct is deliberate, repeated, and foreseeably harmful.

To ensure transparency and deter further evasion, the Court may also require sworn, biweekly compliance reports from Defendants, signed by counsel of record and certified under Rule 11. These updates would confirm, with verifiable proof, any deliveries made, transmissions completed, or supplements produced. Such oversight is appropriate where parties have repeatedly represented compliance without furnishing a trace of actual performance.

Finally, Plaintiff respectfully requests that the Court reserve its authority to refer this matter, if warranted, for criminal contempt proceedings or prosecutorial investigation should additional evidence reveal knowing falsification or obstruction of judicial process. This reservation would reflect the seriousness of the misconduct at issue and the Court's commitment to preserving the enforceability of its orders.

These remedies are not punitive—they are restorative. They are necessary to ensure that the adversarial process remains grounded in substance, not simulation; that judicial orders are treated as binding, not optional; and that vulnerable litigants are not procedurally excluded by

17

institutional actors who mask obstruction behind procedural formalism. Justice in this case demands more than tolerance—it requires meaningful accountability.

### IV.5. Systematic Obstruction, Sham Compliance, and Failure to Confer in Good Faith

Defendants have engaged in a sustained pattern of obstruction, evasion, and concealment that has effectively denied Plaintiff access to discovery. Despite repeated efforts—both through counsel and *pro se*—Plaintiff has not received a single verified or usable discovery production. Defendants cite Bates-stamped materials, yet Plaintiff has never received any documents capable of supporting depositions, dispositive motions, or trial preparation.

Their refusal to engage meaningfully in the meet-and-confer process reflects a broader disregard for both Local Rule 37-1 and the cooperative mandate of Rule 37. Plaintiff's January 13, 2025 Deficiency Letter identified specific and itemized gaps in production (see Exhibit 2) . Rather than address these deficiencies, defense counsel dismissed them wholesale, blaming Plaintiff's former attorney (See Exhibit 1). This response underscores Defendants' bad faith.

Defendants claim they served discovery on Plaintiff's former counsel on July 19, 2024—a statement made in their May 27, 2025 correspondence and referenced during the May 21, 2025 case conference. Yet no admissible evidence substantiates that delivery, and Plaintiff was never informed of it until that hearing. Up to then, he had received only deficient interrogatory responses and an unusable document log, transmitted in response to his good-faith inquiries.

Assuming no production had occurred, Plaintiff focused his efforts on obtaining complete responses to the interrogatories. That assumption proved correct: after multiple requests, former counsel eventually mailed what was purported to be Plaintiff's file in December 2024. The envelope arrived visibly unsealed and entirely empty—no flash drive, no documents (see Exhibit 10)—confirming Plaintiff's longstanding concern. Although a new flash drive was eventually sent

later that month, it contained no discovery materials beyond the previously referenced, incomplete sets of interrogatory responses. This failure delayed Plaintiff's ability to assess, challenge, or incorporate Defendants' discovery into his case strategy, significantly impairing his preparation for depositions, dispositive motions, and other pretrial matters—a prejudice that remains ongoing and irreparable.

Following the Court's May 21 directive, Defendants claimed they re-sent the discovery via certified mail on May 23, 2025. However, the USPS tracking number provided (7010 0780 0001 4131 4109) has remained in "Label Created, Not Yet in System" status, indicating that the package was never handed over to USPS.

This failure calls into question whether the July 2024 production ever occurred. Defendants have offered no tracking confirmation, no delivery record, and no correspondence to support it. The record shows:

   (i)  Plaintiff has never received discovery from Defendants;

   (ii)  The December 2024 envelope from former counsel was empty and unverified;

   (iii) No proof exists of the July 19, 2024 production;

   (iv) Defendants failed to re-produce discovery even after court order.

This is not mere delay—it is obstruction through false representations and performative compliance. Defendants' pattern of misrepresentation has impeded Plaintiff's ability to litigate, prepare for depositions, or respond to dispositive motions. Whether the July 2024 production ever occurred is doubtful; recent failures make it appear increasingly fabricated.

This conduct is ethically indefensible. Plaintiff has filed formal complaints with the Indiana State Bar and the Indiana Supreme Court Disciplinary Commission, supported by documented misrepresentations and discovery abuse. Additional oversight referrals are under review. The

evidentiary record underlying those complaints will be submitted alongside Plaintiff's request for sanctions under Rule 37(b), Rule 11(b), 28 U.S.C. § 1927, and the Court's inherent authority.

This case is no longer about delay—it is about exclusion. Nearly two years into litigation, Plaintiff has been categorically denied access to discovery in violation of the Federal Rules and the Court's May 22, 2025 Order. As the Seventh Circuit recognized in *Brown* v *Columbia Sussex Corp.*, 664 F.3d 182, 191–92 (7th Cir. 2011), discovery is not a "shell game." Repeated violations may warrant terminating sanctions, *Hindmon* v *Nat'l-Ben Franklin Life Ins. Co.*, 677 F.2d 617, 620 (7th Cir. 1982), and default is proper where a party's misconduct renders fair adjudication impossible, *Halaco Eng'g Co.* v *Costle*, 843 F.2d 376, 380 (9th Cir. 1988).

The prejudice is severe and irreparable. Without discovery, Plaintiff cannot move forward. A proportional and meaningful remedy is now both necessary and warranted.

## IV.6. Legal, Structural, and Equitable Grounds for Default Judgment Pursuant to Rule 37(b)(2)(A)(vi)

Plaintiff respectfully submits that the entry of default judgment is not only authorized under Rule 37(b)(2)(A)(vi) of the Federal Rules of Civil Procedure, but fully warranted in light of Defendants' sustained, knowing, and willful violation of this Court's Discovery Order. The conduct at issue far exceeds mere negligence or bureaucratic oversight; it constitutes a deliberate pattern of strategic evasion, misrepresentation, and obstruction that has inflicted material prejudice and rendered adversarial resolution on the merits impossible.

Under Rule 37(b)(2)(A)(vi), courts may impose a default judgment where a party fails to obey an order to provide or permit discovery. This authority is structural, not punitive; it exists to ensure that the adversarial process can function where one party has undermined it by refusing to comply with core obligations. Defendants' failure to re-produce discovery by the court-ordered

Case 1:24-cv-00519-SEB-MG    Document 110    Filed 06/08/25    Page 21 of 30 PageID #: 1825

deadline—combined with their submission of a procedurally empty "Notice of Discovery Production" unsupported by any delivery, tracking, or corroboration—satisfies the threshold for dispositive sanctions. Their actions reflect not mistake or confusion, but conscious litigation strategy aimed at avoiding accountability while simulating compliance.

As the Ninth Circuit affirmed in *Halaco Engineering Co.* v *Costle*, 843 F.2d 376 (9th Cir. 1988), default is appropriate when noncompliance is willful, undertaken in bad faith, or not excused by external circumstances. That principle applies squarely here. Defendants created a shipping label that was never scanned by USPS, then relied on it to claim fulfillment of their obligation without offering a shred of admissible evidence to support that representation. This maneuver was not innocuous—it was a calculated act of procedural theater intended to frustrate judicial enforcement and deflect Plaintiff's rightful demands.

In *Commodity Futures Trading Commission* v *Noble Metals International, Inc.*, 67 F.3d 766 (9th Cir. 1995), the court upheld default where a party misled the court while refusing to produce required discovery. That same dynamic governs here: Defendants invoked a facially compliant docket entry while actively withholding the materials central to Plaintiff's case. Their gesture was not merely hollow—it was misleading, and as such, it materially distorted the procedural record.

The Eighth Circuit in *Boogaerts* v *Bank of Bradley*, 961 F.2d 765 (8th Cir. 1992), further emphasized that default may be warranted even in the absence of explicit defiance when noncompliance is cumulative, recurrent, and results in actual prejudice. That standard is plainly satisfied. Plaintiff, a self-represented litigant with documented health-related limitations, has been placed at a procedural disadvantage so severe that it compromises his ability to prosecute his

claims, respond to dispositive motions, or meet judicial deadlines with the factual and evidentiary tools that discovery is meant to provide.

Within the Seventh Circuit, it is well established that disregard for a court order implicates the legitimacy of the judicial process itself. In *Hindmon* v *National-Ben Franklin Life Insurance Co.*, 677 F.2d 617 (7th Cir. 1982), the court held that courts must act where orders are disobeyed, not only to vindicate the rights of the opposing party, but to preserve the authority of the court. The Defendants' conduct here—characterized by procedural posturing, silence in the face of Plaintiff's repeated outreach, and a complete absence of corrective action—constitutes a procedural affront that threatens both.

The Supreme Court's decision in *Chambers* v *NASCO, Inc.*, 501 U.S. 32 (1991), provides additional reinforcement. There, the Court recognized that federal courts possess inherent authority to impose sanctions, including default, where one party subverts the adjudicative process through bad faith conduct. That authority is not exercised to punish, but to restore fairness, protect judicial integrity, and ensure that the rule of law is respected. The present case is a textbook example of a litigant seeking to manipulate process to avoid consequence, while cloaking obstruction in formal compliance.

The evidentiary record before this Court demonstrates, without ambiguity, that Defendants directly violated a discovery order; falsely represented compliance; imposed cumulative, compounding prejudice on a pro se litigant; and executed a litigation strategy aimed at delaying, obscuring, and ultimately nullifying the Court's authority. Taken together, these elements warrant the imposition of default judgment. For nearly two years, Plaintiff has been systematically denied access to core discovery, subjected to a sustained pattern of procedural misdirection and obfuscation, and compelled to seek judicial relief repeatedly—with no meaningful effect.

Should the Court determine that default is premature, Plaintiff respectfully requests the imposition of sanctions of comparable gravity, including adverse inferences as to withheld materials, preclusion of dispositive defenses, monetary sanctions reflecting the harm suffered, or factual presumptions needed to neutralize the imbalance created by Defendants' misconduct. However, Plaintiff emphasizes that no lesser remedy would suffice to remediate the harm already caused or to vindicate the judicial authority that Defendants have so openly undermined.

Default judgment is not only legally justified—it is procedurally necessary, factually proportionate, and equitably compelled. Anything less would reward bad faith, erode judicial enforcement, and cement a precedent in which disobedience carries no consequence. That outcome would not merely prejudice Plaintiff—it would damage the very integrity of federal civil process. The Court should act to prevent it.

## V. REQUEST FOR RELIEF

In light of Defendants' deliberate, recurrent, and willful violations of this Court's May 22, 2025 Order (Dkt. 104), and pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, and the Court's inherent supervisory powers, Plaintiff respectfully requests the imposition of remedies calibrated to the seriousness of the misconduct, the institutional importance of compliance, and the procedural harm suffered. At the core of this request lies the demand for default judgment. That remedy is not sought lightly, but as a necessary corrective to a calculated pattern of defiance, misrepresentation, and procedural sabotage. The entry of default under Rule 37(b)(2)(A)(vi) is warranted where, as here, a party has not only failed to comply with a discovery order, but has falsely represented such compliance through deceptive docket filings. This conduct reflects not error or confusion, but knowing litigation abuse. It violates the principles articulated by the Supreme Court in *Societe*

*Internationale* v *Rogers*, 357 U.S. 197, 212 (1958), and *Nat'l Hockey League* v *Metro. Hockey Club*, 427 U.S. 639, 642–43 (1976), which establish that willful disobedience of a court order— particularly when compounded by procedural bad faith—demands strong judicial response.

Should the Court determine that default judgment is premature at this time, Plaintiff requests in the alternative the imposition of sanctions commensurate with the gravity of Defendants' obstruction. These include the judicial establishment of core facts relevant to Plaintiff's claims; the preclusion of Defendants from relying on any evidence not properly and verifiably disclosed to date; the striking of portions of the pleadings that rest on undisclosed material; and the temporary stay of proceedings until full, certified compliance is achieved. These forms of partial relief are squarely authorized under Rule 37(b)(2)(A) and are necessary when parties employ symbolic gestures—such as filing a false "Notice of Production"—to feign cooperation while concealing substantive default. The Seventh Circuit has recognized the appropriateness of such measures in *Hindman* v *Nat'l-Ben Franklin Life Ins. Co.*, 677 F.2d 617, 620 (7th Cir. 1982).

Plaintiff further requests that Defendants be compelled to re-produce the entirety of the ordered discovery within seventy-two hours (72), both by secure electronic transmission and by physical delivery with signed receipt, accompanied by a sworn certification of completeness and timeliness. This step is essential not merely to facilitate litigation, but to restore a modicum of trust in the discovery process. To allow yet another unverified production attempt would compound the damage already done.

Additionally, Plaintiff seeks an award of reasonable expenses incurred in preparing and litigating this Motion, consistent with Rule 37(b)(2)(C) and the Court's equitable powers. But beyond financial reimbursement, Plaintiff respectfully requests that the Court acknowledge the

extraordinary personal toll that this misconduct has caused. Defendants' willful obstruction has not merely complicated litigation—it has materially worsened Plaintiff's health, aggravated a documented neurological condition, and disrupted caregiving and medical obligations that were already fragile. This harm was foreseeable and falls squarely within the legal protections afforded by the Thin Skull Doctrine, as articulated in *Murray* v *Chicago Transit Authority*, 252 F.3d 880, 888 (7th Cir. 2001). Courts have recognized that procedural obstruction which disproportionately burdens medically vulnerable or pro se litigants may amount to functional exclusion from adjudication. See *Bonnette* v *Shinseki*, 907 F. Supp. 2d 54, 64 (D.D.C. 2012); *Kaba* v *Stepp*, 458 F.3d 678, 687 (7th Cir. 2006).

In view of this compounded harm, Plaintiff urges the Court to fashion relief that transcends transactional costs and fulfills the broader remedial purpose of Rule 37 and the judiciary's inherent equitable mandate. A purely financial remedy would be insufficient where the injury inflicted is not merely monetary, but constitutional and systemic. The federal rules exist to protect not only access to evidence, but access to justice itself.

Plaintiff also notifies the Court that Defendants have recently refused to negotiate in good faith the terms of a Protective Order. They offered only a generic, one-sided draft, rejected Plaintiff's redlines without explanation, and declined to engage further. This conduct reflects the same bad-faith posture that has characterized their discovery efforts and appears inconsistent with Rule 26(c)(1), Local Rule 37-1, and this Court's prior directives. Plaintiff reserves the right to address this obstruction in a supplemental motion should it persist.

Given this broader context of sustained noncompliance and procedural bad faith, Plaintiff respectfully requests that the Court issue an Order to Show Cause as to why Defendants and their legal representatives—particularly in-house counsel at Indiana University—should not be

sanctioned under 28 U.S.C. § 1927, Rule 11, and the Court's inherent powers. The record reflects a pattern of knowing obstruction and deceptive filing activity that calls for individual accountability.

In tandem, Plaintiff asks that the Court issue formal findings regarding whether defense counsel's conduct—especially the filing of the misleading "Notice of Production"—violates Indiana Rule 11(A) and Federal Rule 11(b), and merits referral to disciplinary authorities. As established in *Roadway Express, Inc.* v *Piper*, 447 U.S. 752, 766 (1980), courts are empowered to make such referrals when attorney misconduct compromises the integrity of proceedings.

Accordingly, Plaintiff requests that this Court refer defense counsel to the Indiana Supreme Court Disciplinary Commission for potential violations of Rules 3.3 (Candor Toward the Tribunal), 3.4(c) (Knowing Disobedience of Court Rules), and 8.4(d) (Conduct Prejudicial to the Administration of Justice). Plaintiff also gives notice of his intent to file formal grievances with relevant state and federal oversight bodies. These actions are not retaliatory; they are the necessary consequences of conduct that undermines due process and public trust in the judicial system.

Finally, Plaintiff requests that the Court enter a finding of technical contempt based on Defendants' willful noncompliance with Dkt. 104. Such a finding, preserved in the record, is essential both for future remedial purposes and as a formal recognition that the dignity of this Court has been openly challenged. The rules governing civil litigation are not advisory, and their evasion by institutional actors must not be condoned.

## VI. PLAINTIFF HAS ACTED IN GOOD FAITH

In contrast to the repeated obstruction, deflection, and procedural manipulation employed by Defendants, Plaintiff has consistently acted in full compliance with the Federal Rules of Civil Procedure, the Indiana Trial Rules, and the professional obligations that govern all participants in

litigation. Throughout these proceedings, Plaintiff has demonstrated an unwavering commitment to procedural integrity, diligence, and candor. At each turn, he has met his obligations—both while represented and after assuming his *pro se* status—by filing timely motions, complying with all court orders, and engaging opposing counsel in good-faith efforts to resolve discovery disputes without judicial intervention.

Plaintiff's January 13, 2025 Discovery Deficiency Letter laid out specific and reasonable objections. When Defendants responded with a blanket rejection and a procedurally hollow "privilege log," Plaintiff did not escalate reflexively. Instead, he made further efforts to confer and notified the Court only when it became clear that Defendant's posture rendered meaningful dialogue impossible. Even then, he refrained from speculative or inflammatory rhetoric, choosing instead to document the misconduct with care, evidentiary support, and respect for the Court's role in resolving disputes.

In doing so, Plaintiff has fulfilled the spirit and the letter of Rule 37, Local Rule 37-1, and Rule 11(b). His filings have been factually grounded, legally substantiated, and tailored to the specific relief authorized by applicable law. At no time has Plaintiff sought advantage through procedural gamesmanship, exaggerated claims, or obstructionist delay. Rather, his actions reflect a good-faith effort to obtain what the Court has already ordered and what the Rules require: timely, complete, and truthful disclosure of relevant information.

As federal courts have repeatedly affirmed, good faith is not measured by volume or posture, but by substance. Plaintiff's behavior satisfies the standard articulated in *Carlucci* v *Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir. 1985), which holds that even pro se litigants must adhere to rules—but are equally entitled to fairness when they do so. See also *Anderson* v *Beatrice Foods Co.*, 900 F.2d 388, 395 (1st Cir. 1990), affirming that litigants who approach the Court with

clean hands should not be penalized for their adversary's malfeasance. Plaintiff's integrity, by contrast to Defendants' strategic misconduct, further supports the relief sought.

This Motion does not seek retaliation or retribution. It is a measured and necessary effort to restore balance, ensure enforcement of this Court's own directives, and affirm that no party—however powerful or well-represented—is above the procedural framework that safeguards civil justice.

## VII. CONCLUSION

Defendants' persistent failure to comply with this Court's May 22, 2025 Order is not an isolated lapse, but a continuation of a deliberate strategy of avoidance, misrepresentation, and procedural sabotage. The filing of a so-called "Notice of Discovery Production," unsupported by any evidence of mailing, receipt, or delivery, represents not good-faith error but calculated evasion. The lack of a USPS scan, the absence of follow-up or remediation, and the reliance on a self-serving, unverified docket entry all confirm that Defendants did not intend to comply—they intended to create the appearance of compliance without fulfilling their legal obligation.

This conduct constitutes technical contempt, violates Rule 37(b), undermines Rule 11, and runs afoul of fundamental principles of due process and fair adjudication. It has caused Plaintiff irreparable prejudice, delayed the resolution of this case, and placed an unrepresented litigant at a systemic disadvantage in direct contravention of the values that animate the Federal Rules. As *Hickman* v *Taylor*, 329 U.S. 495, 507 (1947) made clear, discovery is a mechanism of mutual transparency, not tactical obstruction. When a party abuses it to withhold essential evidence while simulating compliance, the adversarial system breaks down.

Accordingly, Plaintiff respectfully renews his request for robust judicial intervention. This includes an immediate order compelling full discovery production within seventy-two hours (72);

the imposition of Rule 37(b)(2)(A) sanctions including adverse inference, evidentiary preclusion, cost-shifting, and—where warranted—default judgment; and a show cause order directed to defense counsel for potential violations of their professional and procedural obligations. Additionally, Plaintiff requests that the Court enter a formal finding of technical contempt, preserve it for the record, and, if necessary, refer counsel for disciplinary review.

Justice demands more than formal gestures. It demands substantive accountability. In the face of sustained misrepresentation, performative compliance, and knowing disregard for court authority, this Court must act—not only to restore balance in this litigation, but to protect the institutional legitimacy of the judicial process itself.

Plaintiff submits this Motion in good faith, grounded in law, fact, and necessity, and with full confidence in the Court's commitment to enforce its orders and protect the integrity of its process.

Respectfully submitted,

_/s/ Enric Mallorquí Ruscalleda_

Pro Se Plaintiff

Date: June 8, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2025, I electronically filed the foregoing _Plaintiff's Motion to Enforce Discovery Order, Impose Sanctions Under Rule 37(b), and Grant All Further Relief Necessary to Preserve the Integrity of These Proceedings_ with the Clerk of the Court for the United States District Court for the Southern District of Indiana using the CM/ECF system, which will send notification of such filing to all counsel of record registered to receive CM/ECF notices.

Additionally, pursuant to Rule 5 of the Federal Rules of Civil Procedure and Local Rule 5-2 of the Southern District of Indiana, a true and correct copy of the foregoing was served via electronic mail upon the following counsel of record for Defendant:

Mr. Myekeal D. Wynn

Assistant General Counsel

Indiana University

Office of the Vice President and General Counsel

301 University Blvd, Room 5030

Indianapolis, IN 46202

Email: myesmith@iu.edu

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 8, 2025

Respectfully submitted,

*/s/ Enric Mallorquí Ruscalleda*

Enric Mallorquí-Ruscalleda, PhD, JD, LLM

Pro Se Plaintiff

Address on file with the Court