**FILED**

**06/28/2025**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ENRIC MALLORQUI-RUSCALLEDA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:24-CV-00519-SEB-MG |
| ) | |
| THE TRUSTEES OF INDIANA ) | |
| UNIVERSITY-PURDUE ) | |
| UNIVERSITY INDIANAPOLIS, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S VERIFIED RESPONSE TO ORDER TO SHOW CAUSE (DKT. 115) PURSUANT TO RULE 11(C)(3) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

NOW COMES Plaintiff, Enric Mallorqui-Ruscalleda, appearing *pro se*, and with due respect to this Honorable Court, hereby submits this Verified Response to the Order to Show Cause issued on June 25, 2025 (Dkt. 115). Plaintiff denies any intent to mislead, obstruct, or misrepresent the law, and submits this statement in good faith, seeking clarity, fairness, and a reaffirmation of procedural equity in the exercise of his rights.

**I. ON GOOD FAITH AND THE MANDATE OF RULE 11**

Rule 11(b) requires that parties certify, to the best of their knowledge and after reasonable inquiry under the circumstances, that their representations are not made for an improper purpose and are legally warranted. Plaintiff respectfully submits that all motions and notices filed were the product of good faith effort to engage with the judicial process, not to evade, subvert, or burden it.

As a self-represented litigant with limited legal training, working under significant linguistic and medical constraints protected under the Americans with Disabilities Act (42 U.S.C.

1

§ 12101 et seq.), Plaintiff has faced structural obstacles in accessing case law, interpreting doctrinal nuance, and navigating a procedurally complex record. These factors materially limit Plaintiff's capacity to verify sources with the precision of licensed counsel and have, on occasion, led to inadvertent citation errors. Nonetheless, Plaintiff affirms that no argument was made recklessly, no quotation was fabricated intentionally, and no filing was submitted with malice or frivolity.

**II. SPECIFIC RESPONSES TO THE ALLEGED CITATION ISSUES**

On *Offutt, Jordan, Balistrieri, Caperton*: Plaintiff acknowledges that certain quoted language may not align precisely with the official holdings of these decisions. Where such discrepancies exist, Plaintiff is prepared to submit a corrected appendix and affirms that these citations were intended to express the broader principles of judicial disqualification and public confidence, not to deceive.

On *Antar* and *Sibla*: Plaintiff concedes that summaries or paraphrases found in legal commentary may have been mistakenly incorporated as direct quotations. The principle advocated — that courts should refrain from adjudicating substantive matters while motions for recusal are pending — was advanced in earnest, with reliance on public interpretations of appellate guidance.

On *Perez* v *County of Stanislaus*: Plaintiff regrets the inclusion of this reference, which may have derived from non-official commentary or secondary sources. Its mention was intended to support the proposition that interpreter access is essential to procedural fairness, particularly under the ADA, not to mislead the Court.

Plaintiff wishes to emphasize that no strategic advantage was sought through these citations and that any imprecision stemmed from structural barriers inherent in *pro se* litigation, compounded by disability-related limitations.

Moreover, Plaintiff respectfully underscores that, due to ongoing and severe financial hardship, he has been compelled to rely exclusively on open-access and publicly available legal resources — including nonprofit legal databases, academic commentary, government repositories, and community-curated platforms. Plaintiff lacks the financial means to subscribe to commercial legal research services such as LexisNexis, Westlaw, or Bloomberg Law, which remain prohibitively expensive for indigent litigants. While every reasonable effort has been made to verify the accuracy and relevance of cited authorities, the structural limitations inherent in non-subscription research tools may have, on rare occasion, resulted in inadvertent citation discrepancies. Such imperfections are not the product of malice, deceit, or frivolity, but rather the foreseeable consequence of litigating under material deprivation. Any procedural or citation error must therefore be interpreted through this lens of economic constraint and informational inequality — not mistaken for recklessness, nor penalized as misconduct.

### III. ON FILING VOLUME, PROCEDURAL DILIGENCE, AND STRUCTURAL BARRIERS

Plaintiff respectfully acknowledges that the volume and frequency of his filings may be perceived as burdensome. Nonetheless, each submission was narrowly tailored to serve a specific and constitutionally protected purpose: to preserve appellate rights, to request clarification of evolving procedures, to assert Plaintiff's ADA-covered status, or to respond to shifting dynamics in the record. Far from constituting frivolous or dilatory conduct, these filings represent the earnest and sustained effort of a private citizen attempting, in good faith, to navigate a legal system whose structural complexity, opacity, and adversarial orientation toward self-represented litigants is well documented in scholarly and judicial literature.

Moreover, Plaintiff emphasizes that the volume of his filings was not a product of litigious excess, but rather a direct and necessary response to the procedural posture and actions taken against him. Each document submitted was triggered by new developments, omissions, or escalations that materially affected Plaintiff's rights. To remain silent, or to forgo timely filings in the face of these compounded harms, would have been to abandon the very protections that the judicial process is designed to afford. The record must therefore be viewed in the context of self-defense, not provocation.

In addition to the medical and linguistic constraints previously noted, Plaintiff respectfully draws the Court's attention to the cultural and educational barriers he faces as a foreign-trained academic who has not received formal instruction in U.S. law or procedure. Without access to professional mentorship, bar-level legal training, or familiarity with common law conventions, Plaintiff is operating under an inherent structural disadvantage that magnifies the difficulty of even basic procedural compliance.

Plaintiff invokes the longstanding principle articulated in *Haines* v *Kerner*, 404 U.S. 519 (1972), that pro se pleadings must be liberally construed. Plaintiff respectfully urges the Court to extend that liberal spirit not only to the pleadings themselves, but also to the *circumstantial reality* from which they arise — one shaped by disability, cultural displacement, and the absence of U.S. legal training or institutional support.

Courts have long recognized that pro se litigants "cannot be expected to frame issues with the precision of an attorney," particularly where language, culture, or educational background present additional obstacles. See *Erickson* v *Pardus*, 551 U.S. 89, 94 (2007); *Estelle* v *Gamble*, 429 U.S. 97, 106 (1976).

As the Seventh Circuit has acknowledged, a court must consider the particular circumstances of pro se litigants, including language difficulties and lack of familiarity with legal proceedings. See *Donald* v *Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996).

Moreover, Plaintiff emphasizes that the volume of his filings was not a product of litigious excess, but rather a direct and necessary response to the procedural posture and actions taken against him. Each document submitted was triggered by new developments, omissions, or escalations that materially affected Plaintiff's rights. To remain silent, or to forgo timely filings in the face of these compounded harms, would have been to abandon the very protections that the judicial process is designed to afford. The record must therefore be viewed in the context of self-defense, not provocation.

Furthermore, Plaintiff respectfully notes that he was not aware that there existed any formal or informal expectation limiting the number of motions or filings in federal court. In Plaintiff's legal culture of origin, complex cases routinely involve thousands — and sometimes hundreds of thousands — of pages of documentation, including successive briefs, exhibits, and procedural memoranda. At no point in Plaintiff's legal education or experience had he encountered the notion that filing multiple documents in defense of one's rights might be construed as burdensome, excessive, or sanctionable. Plaintiff now understands that American courts operate under different norms of procedural economy, but affirms that his actions arose not from disregard, but from cultural and legal unfamiliarity, combined with an earnest desire to protect the integrity of his claims. What may appear excessive through a domestic procedural lens may, from Plaintiff's cultural standpoint, reflect diligence, not impropriety.

**IV. ON JUDICIAL DISCRETION AND SANCTION AVOIDANCE**

The Seventh Circuit has consistently held that sanctions under Rule 11 must be reserved for egregious conduct that reflects objectively unreasonable legal positions, willful distortion, or abuse of process (*Monee Nursery* v *IUOE*, 348 F.3d 671, 677 (7th Cir. 2003)). Misstatements that arise from good faith effort, particularly by litigants facing cognitive or linguistic barriers, do not warrant punitive treatment. To that end, Plaintiff respectfully invokes this Court's discretion and calls upon its duty to administer justice not merely as a matter of procedural control but of equitable balance, constitutional access, and judicial restraint.

Moreover, Plaintiff invokes the foundational principle of access to justice, as enshrined in both the U.S. Constitution and international instruments to which the United States is a party, including Article 14 of the International Covenant on Civil and Political Rights (ICCPR). A system that penalizes litigants for their lack of counsel, income, or cultural familiarity risks violating not only domestic due process but also broader norms of fairness and equal protection under the law. Pursuant to the ADA, federal courts have an affirmative obligation to provide reasonable accommodations to self-represented litigants with documented cognitive, linguistic, or medical disabilities, so as to ensure meaningful access to judicial proceedings. See *Duvall* v *County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001).

## V. ON IRREPARABLE HARM, MORAL DISSONANCE, AND THE COLLAPSE OF THE PLAINTIFF'S LIFE

Plaintiff further submits that, at 52 years of age, he has never in his life faced any accusation of dishonesty, misconduct, or impropriety. He comes from a cultural tradition in which honor, integrity, and one's word are not mere virtues, but sacred obligations — values instilled from childhood by parents whose moral rigor shaped every aspect of Plaintiff's life and education. To now stand before this Court accused, however implicitly, of bad faith or misrepresentation for

exercising the lawful right to assert his claims is not only deeply painful — it is perceived as a profound affront to that ethical upbringing and to the cultural foundations of dignity from which Plaintiff derives his moral compass.

For Plaintiff, the mere suggestion that his word may be false — that his testimony, his filings, or his motives might be viewed with suspicion — inflicts a wound far deeper than any monetary sanction could. It strikes at the innermost foundations of identity: the belief, instilled from childhood in a working-class family where dignity was measured by integrity, that truth is owed not to power, but to conscience; that one speaks not to deceive, but to preserve what is just. To cast doubt upon that truth is not, for Plaintiff, a matter of legal disagreement — it is an existential injury, and a symbolic humiliation that no judicial disposition can remedy.

Plaintiff recalls, with solemn clarity, that this is not the first time his sincerity has been questioned in these proceedings. When he previously sought, in good faith, to withdraw his complaint voluntarily — without prejudice, without hostility, and with dignity — that withdrawal was denied unless it carried the punitive condition of prejudice. That rejection, however formal, cast a shadow upon Plaintiff's motives, insinuating disingenuousness where there was only exhaustion and ethical necessity.

To now face a second instance in which his word, intentions, or integrity are again placed under suspicion is, for Plaintiff, not only unbearable — it is incompatible with the fundamental respect owed to any human being, regardless of status, training, or representation. No position of institutional authority — however exalted — confers the moral license to injure with impunity the dignity of a person who has acted transparently, consistently, and lawfully under profound structural adversity.

Plaintiff offers these reflections not as an act of defiance, but as a final plea: that in the administration of justice, moral truth must not be punished; and that sincerity, even when powerless, still deserves to be heard without shame.

To compound the injustice, Plaintiff has endured extrajudicial coercion, veiled threats, and abusive conduct from Defendant's counsel — conduct that has already been brought to this Court's attention through verified notices and filings, and which Plaintiff stands ready to substantiate further if necessary. It is precisely this coercive asymmetry — where a vulnerable pro se litigant is harassed outside the record, and then penalized within it — that strikes at the core of procedural justice.

And now — after enduring this collapse, after laying bare a pattern of misconduct with clarity and perseverance — Plaintiff is met not with protection or vindication, but with the threat of sanctions, the suggestion that his appeals for fairness were reckless, and the imposition of additional burdens on a life already devastated.

Plaintiff poses this question to the Court not as a challenge to its authority, but as a sincere and solemn reflection drawn from lived experience: What becomes of justice when the party who stood alone — unrepresented, medically impaired, and persistently documenting misconduct — is met not with protection or remedy, but with the specter of sanction?

To impose punitive measures on this record would not merely constitute a procedural determination; it would be perceived, from Plaintiff's lived vantage point, as a symbolic abandonment — a message that truth, when voiced without the imprimatur of counsel or privilege, may not find safe harbor in the courts.

This is not an accusation, nor a challenge to the Court's integrity, but rather an earnest plea — that the judiciary continue to serve as a sanctuary for those who lack power, privilege, or representation, and who come in good faith, seeking only fairness.

Plaintiff respectfully clarifies that the tone and substance of this Response, particularly where it conveys emotional, cultural, or existential distress, are not intended as a moral objection to this Court's authority, nor as a challenge to its integrity. Rather, they reflect Plaintiff's attempt to offer a contextual account of his lived experience within a system whose norms, language, and adversarial mechanisms remain structurally foreign and daunting to a pro se litigant with documented impairments. This narrative is offered in the spirit of transparency and self-advocacy — not defiance — and it seeks only to assist the Court in understanding the human reality behind the procedural record.

## VI. RELATED FILING AND RESERVATION OF RIGHTS

Concurrently with this Verified Response, Plaintiff has filed a Motion to Withdraw Complaint on Ethical, Medical, ADA, and Economic Hardship Grounds, seeking voluntary dismissal without prejudice and without sanctions. Said Motion incorporates additional facts and legal grounds supporting Plaintiff's decision to disengage from litigation due to irreparable harm, systemic barriers, and emerging humanitarian crisis. It is respectfully submitted that both filings should be read in tandem, as they reinforce each other and articulate a unified, principled basis for Plaintiff's requested relief.

Plaintiff explicitly reserves all constitutional and legal rights for future assertion, and reiterates that no act in this process reflects frivolous intent, but rather a profound ethical necessity to step back from a system that has become unendurable.

Plaintiff further reserves the right to pursue appropriate remedies in other forums or at a future time, should conditions of health, stability, or legal feasibility permit. This withdrawal shall not be construed as waiver, settlement, or abandonment of the substantive merits of the underlying claims.

To punish Plaintiff under these circumstances would not only depart from legal proportionality but would undermine the moral function of the judiciary as a last resort for the vulnerable. In a society governed by law, the courtroom should be a refuge of last resort — not a site of retribution against those who lack power, training, or representation, yet still come forward to seek justice.

**VII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1. Decline to impose any sanction under Rule 11(c), finding that Plaintiff's conduct was neither willful nor reckless and arose from structural limitations and good faith efforts;

2. Take full account of Plaintiff's ADA-covered status, cognitive limitations, and exceptional financial and medical hardship, all of which render further litigation untenable;

3. Take notice of Plaintiff's concurrently filed Motion to Withdraw Complaint, and consider this Verified Response as supportive context for that motion, rather than as a standalone defense;

4. Dismiss all pending matters without sanctions, adverse inferences, or procedural restrictions, thereby allowing Plaintiff to withdraw with dignity and without prejudice;

5. Acknowledge that Plaintiff reserves all legal and constitutional rights for future assertion, and that this withdrawal reflects ethical and medical necessity, not a waiver of substantive claims;

6. In the alternative, and in view of Plaintiff's concurrently filed Motion to Withdraw Complaint on Ethical, Medical, ADA, and Economic Hardship Grounds, Plaintiff respectfully requests that this Court treat such Motion as an additional basis to resolve this matter without the imposition of sanctions and with due regard for Plaintiff's constitutional and statutory rights.

7. Grant such other relief as justice, equity, and constitutional fairness may require.

8. Formally acknowledge the structural, cultural, and economic barriers that have shaped Plaintiff's litigation efforts, and affirm that any procedural missteps occurred despite, not because of, Plaintiff's commitment to respectful and lawful participation in this process;

9. In view of the cumulative toll of this litigation — including documented harm, systemic barriers, and Plaintiff's current inability to proceed — GRANT leave to withdraw with dignity and without prejudice, in recognition that this withdrawal reflects ethical necessity, not waiver of substantive claims.

Respectfully submitted,

*/s/ Enric Mallorquí-Ruscalleda*

Enric Mallorquí-Ruscalleda

Plaintiff, pro se

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2025, I electronically filed the foregoing **Plaintiff's Verified Response to Order to Show Cause (Dkt. 115)** with the Clerk of the Court for the United States District Court for the Southern District of Indiana using the CM/ECF system, which will send notification of such filing to all counsel of record registered to receive CM/ECF notices.

Additionally, pursuant to Rule 5 of the Federal Rules of Civil Procedure and Local Rule 5-2 of the Southern District of Indiana, a true and correct copy of the foregoing was served via electronic mail upon the following counsel of record for Defendant:

Mr. Myekeal D. Wynn

Assistant General Counsel

Indiana University

Office of the Vice President and General Counsel

301 University Blvd, Room 5030

Indianapolis, IN 46202

Email: myesmith@iu.edu

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 28, 2025

Respectfully submitted,

*/s/ Enric Mallorquí-Ruscalleda*

Enric Mallorquí-Ruscalleda

Email: enric.mallorqui.ruscalleda@gmail.com

Address on file with the Court